IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JAKE PLATT,

              Respondent,

      v.

PAIGE WAGER,

              Appellant.

No. 85758-4-I

DIVISION ONE

UNPUBLISHED OPINION

DÍAZ, J. — A trial court issued a domestic violence protection order (DVPO) against appellant Paige Wager, which protects her ex-husband and co-parent, Jake Platt. The court found that Wager had engaged in domestic violence through unlawful harassment. Wager now asserts that the court failed to make sufficiently specific findings explaining the basis of the DVPO, and that Platt did not proffer sufficient evidence to establish harassment. Wager fails to demonstrate reversible error and we affirm.

I.     FACTS

Wager and Platt were married from 2011 to 2015. They share equal parenting time with their son, R.P., per a superior court parenting plan.

Wager remarried after their divorce and, according to Platt, their co-

parenting relationship began to deteriorate after her second husband attempted suicide with a firearm in 2021. Prior to his own suicide attempt, the second husband's son had committed suicide by a self-inflicted gunshot in 2020.

Platt petitioned for a DVPO in May 2023. In support, he provided a declaration that alleged Wager was abusively targeting him online, and that attached relevant text messages and emails between them, as well as declarations signed by his fiancée and adult son. Platt's fiancée's declaration claimed that Wager once chased her and Platt across a parking lot as they were walking to their car when leaving an event for R.P. Platt's petition also requested the immediate surrender of a number of firearms he claimed Wager owned. The court ex parte granted the petition and entered a temporary order.

Later that month, Platt filed an amended petition, which made several new factual claims and which requested an order of protection for their son in addition to himself. Namely, in a supporting declaration, Platt asserted that a court in Issaquah had entered an entirely separate protective order against Wager in 2022 based on harassing text messages she had sent to her then mother-in-law. Further, he provided evidence that she had since violated that order and faced criminal charges. In the same declaration, he also reported that, following the entry of the temporary order in this matter, he had received another message from Wager in violation of the order, in which she threatened to take full custody of their son.

Additionally, Platt provided a declaration from Wager's second husband, who attested that she possessed numerous high-capacity rifles which did not

conform to legal specifications, and that he was concerned Wager was evading the temporary weapons surrender order. Platt's attorney also filed a declaration attaching an email from a detective in the King County Prosecuting Attorney's Office Regional Firearms Unit. The detective stated that Wager owned six guns, one of which was not accounted for in her purchase history, and that Wager had "blatantly" refused to comply with the surrender order. The detective further stated that three of the weapons were illegally altered or contained a magazine capacity in violation of regulations.

Finally, in his amended petition, Platt stated he feared for his son based upon new information he had recently received. Platt claimed Wager's ex-husband told him several friends had witnessed Wager driving drunk with their son in the car and said that she regularly drank heavily. And Platt asserted that R.P. told him that Wager had once punched him and cursed at him. To supplement his amended petition, he later filed another declaration from his mother, in which she also attested that R.P. had told her that Wager punched him, upsetting and scaring him. She claimed R.P. also told her Wager punished him for lengthy periods if he disagreed with her.

Following a June 2, 2023 hearing, a pro tem commissioner granted Platt's amended petition for a DVPO, protecting both Platt and R.P. The commissioner entered the DVPO solely "based upon the fact that there's been allegations of harm to [R.P.]. . . ." Wager moved for revision.

In July 2023, a superior court judge granted the motion on revision in part and entered an amended protection order. The court struck the provisions of the

prior protection order that related to R.P. because it found only "limited details" showing Wager had physically harmed R.P. and because the timing and nature of the relief sought "raise[d] credibility questions." However, the court denied the motion for revision as to Platt, finding that, based on the totality of the evidence, Platt provided sufficient proof that Wager engaged in domestic violence by unlawfully harassing him.

The court later denied Wager's motion for reconsideration, and she now timely appeals each of the superior court's decisions.[1]

## II. ANALYSIS

### A. Standard of Review

This court reviews a trial court's decision to grant or deny a domestic violence protection order for an abuse of discretion. Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017); see also Juarez v. Juarez, 195 Wn.

---

[1] During the pendency of the appeal, Platt filed a "Motion to Dismiss as Moot" (Sept. 5, 2024), arguing that Wager's appeal should be dismissed because the DVPO has now expired. Wager filed a written opposition to the motion. "Generally, we will dismiss an appeal where only moot or abstract questions remain or where the issues raised in the trial court no longer exist." Price v. Price, 174 Wn. App. 894, 902, 301 P.3d 486 (2013). A case is not moot, however, when the court can still provide effective relief. Hough v. Stockbridge, 113 Wn. App. 532, 537, 54 P.3d 192 (2002). Because this court could provide effective relief to Wager, we address the merits of her claims.

In Wager's opposition to Platt's motion, she also expressly sought as alternative relief, if the panel granted Platt's motion to dismiss, an accompanying order from this court "that the entire superior court case in *Platt v. Wager*, King County Superior Ct. No. 23-2-07898-5 SEA, is moot and order that the case be dismissed and that any findings that Ms. Wager committed domestic violence or represented a physical threat to Mr. Platt be vacated," but offered no authority in support of the proposition that we may issue such an order. Answer of Appellant to "Resp't's Mot. to Dismiss as Moot" at 1-2 (Sept. 9, 2024). Because we reach the merits of her appeal, we need not consider this request further.

App. 880, 890, 382 P.3d 13 (2016) ("We will not disturb such an exercise of discretion on appeal absent a *clear* showing of abuse.") (emphasis added). A court abuses its discretion "when a trial judge's decision is exercised on untenable grounds or for untenable reasons," or "if its decision was reached by applying the wrong legal standard." Id.

In reviewing a trial court's factual findings, this court does not "substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility." In re Parentage of T.W.J., 193 Wn. App. 1, 8, 367 P.3d 607 (2016) (quoting In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)). Instead, this court determines whether substantial evidence supports the findings and whether those findings support the conclusions of law. Graser v. Olsen, 28 Wn. App. 2d 933, 941, 542 P.3d 1013 (2023).

Substantial evidence exists if the record contains "evidence sufficient to persuade a fair-minded, rational person that the finding is true." Id. "[S]ubstantial evidence review 'is deferential and requires the court to view the evidence and reasonable inferences in the light most favorable to the party who prevailed' below." Garza v. Perry, 25 Wn. App. 2d 433, 453, 523 P.3d 822 (2023) (quoting State v. Living Essentials, LLC, 8 Wn. App. 2d 1, 14, 436 P.3d 857 (2019).[2]

B.     The Adequacy of the Trial Court's Findings

Wager first argues that the trial court's findings are not sufficient for

---

[2] Wager argues this court must review the DVPO with a degree of "heightened" scrutiny because she also brings a claim under the First Amendment to the United States Constitution. For the reasons below, we do not reach the merits of her First Amendment claim, and thus we need not and will not consider this argument further.

appellate review. That is, she claims the trial court erred because it did not "set out with specificity which of the communications [she sent to Platt] constituted unlawful harassment." In support, Wager cites to three cases and a court rule, but none support her proposition that a judge must make detailed findings to grant a civil protection order.

Each case Wager relies on require specific findings in discrete legal contexts. For instance, she cites to In re Marriage of Lawrence, 105 Wn. App. 683, 686, 20 P.3d 972 (2001), a family law case in which appellant challenged an order granting custody to her children's father. This court remanded the matter back to the superior court to make additional findings, holding that "[a] trial court must make findings of fact and conclusions of law sufficient to suggest the factual basis for the ultimate conclusions" and that the trial court's findings were "so incomplete that this court is unable to determine the theory upon which it made its decision" to award custody to the respondent. Id.

Lawrence is distinguishable for two reasons. First, the findings were deficient because they were "insufficient for us to determine the basis" of the custody decision, both legally and factually. Id. at 685. Here, in contrast, as we will detail below, this court can determine the statutory basis of Platt's legal theory (harassment) and the general factual basis of the trial court's ultimate conclusions. Cf. Noll v. Special Elec. Co., Inc., 9 Wn. App. 2d 317, 319, 444 P.3d 33 (2019) (where this court held it may remand for additional findings of fact where it is unable to "discern the reasoning or underlying facts supporting [a trial court's] decision," but is not required to do so where the record indicates proper statutory analysis).

6

Second, the basis on which the trial court in <u>Lawrence</u> was required to make "findings of fact and conclusions of law" was inter alia CR 52(a). 105 Wn. App. at 686, n.2. That rule requires trial courts to make specific findings of fact and separate conclusions of law, but generally only in "all actions tried upon the facts without a jury or with an advisory jury" or where "specifically required." CR 52(a)(1) and (2). Those actions "specifically required" include decisions involving (A) "temporary injunctions," (B) as in <u>Lawrence</u>, "domestic relations," and (C) "[i]n connection with any other decision where findings and conclusions are specifically required by statute, by another rule, or by a local rule of the superior court." CR 52(a)(2). Because the authority under which the court in <u>Lawrence</u> was required to issue findings of fact and conclusions of law is inapplicable here, that case is inapposite.[3]

Moreover, the protection order statute makes clear, in its silence on the matter, that it does not require a court to state particular factual findings before issuing a DVPO. RCW 7.105.225(5) states that, when a court "*declines* to issue a protection order, it shall state in writing the particular reasons for the court's denial." (Emphasis added). The statute contains no similar language requiring a court to

---

[3] Wager's reliance on <u>State v. Cannon</u>, 130 Wn.2d 313, 329, 922 P.2d 1293 (1996), fails for similar reasons. <u>Cannon</u> was a criminal bench trial where specific findings of fact are required under CrR 6.1(d) for purposes of appealing a criminal conviction. <u>Id.</u> at 317. Cannon urged our Supreme Court to reverse his conviction because the trial court failed to enter written findings of fact and conclusions of law until two years after his sentencing. <u>Id.</u> at 329. The opinion is focused on the timing and prejudice of belated entry of findings for purposes of the right to appeal a criminal conviction, and is otherwise silent as to the *specificity* of the required findings of fact and conclusions of law, if any, let alone in civil cases such as here. <u>Id.</u> at 329-330.

provide specific facts or reasons it considered and adopted for a decision to *grant* a DVPO.

To "give effect to the legislature's intentions," this court must, "[w]hen possible. . . derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision itself, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." Rodriguez v. Zavala, 188 Wn.2d 586, 591, 398 P.3d 1071 (2017). "Our starting point" for deriving a statute's plain meaning is not only the language on the face of the statute, but also the language of "closely related statutes in light of the underlying legislative purpose." In re Marriage of Drlik, 121 Wn. App. 269, 276, 87 P.3d 1192 (2004).

Wager essentially asks this court to add a requirement where there is none, but we "'must not add words where the legislature has chosen not to include them.'" Birgen v. Dep't of Labor & Indus., 186 Wn. App. 851, 857, 347 P.3d 503 (2015) (quoting Rest. Dev., Inc. v. Cananwill, Inc., 150 Wn.2d 674, 682, 80 P.3d 598 (2003)). "Instead, we construe statutes assuming that the legislature meant exactly what it said." Id. (quoting In re Marriage of Herridge, 169 Wn. App. 290, 297, 279 P.3d 956 (2012)). Therefore, we hold RCW 7.105.225's plain language does not require specific findings before *granting* a DVPO.

Finally, Wager's argument is weakened, rather than strengthened, by her reliance on In re Det. Of LaBelle, 107 Wn.2d 196, 219, 728 P.2d 138 (1986). There, our Supreme Court deemed the trial court's written findings to be deficient in part because they were not specific enough to determine which of two alternative

statutory definitions the court had relied upon. Id. However, the court held that reversal was still not required, because the court's oral statements and the evidence contained in the record "indicate[d]" it relied on appropriate statutory criteria. Id. at 219-220. Our Supreme Court explained, "a trial court is not required to make findings of fact on all matters about which there is evidence in the record; only those which establish the existence or nonexistence of determinative factual matters need be made." Id. at 219. And even if a trial court's written findings are inadequate, the Court held an appellate court may still review the "entire record, including the trial courts' oral decisions, in order to determine the sufficiency of the evidence supporting the trial court's ultimate findings . . . ." Id. "In addition, where, as here, no exceptions are taken below to the findings, we will give them a liberal construction rather than overturn the judgment based thereon." Id.

Here, the orders on review are adequate either in themselves or because they at least allow us to identify "the existence or nonexistence of determinative factual matters" and the statutory basis for the court's decision to grant the DVPO. Id.

Specifically, the court's written order first reiterated the procedural history of Platt's several petitions made in his declarations, and then it expressly compared the level of detail of his allegations that Wager had abused R.P. with the level of detail he provided regarding the allegations of her harassment of him.

As to the latter, in its oral ruling, the court found that:

the level of detail surrounding the physical and verbal abuse asserted by Mr. Platt was significantly different when compared to the level of detail that was provided regarding the other allegations raised against the respondent, Ms. Wager. For example, in the amended

9

petition and the accompanying documents, it was unclear when the child alleged that they were punched by Ms. Wager, when the alleged assaults took place, and when that Mr. Platt learned of the alleged assaults.

In other words, the court identified that the factual allegations of the physical and verbal abuse suffered by Platt were the determinative factual issues, while the alleged physical abuse of R.P. was not.

Furthermore, the court identified the universe of the evidence upon which it was relying and specified the type of domestic violence at issue, finding:

the totality of the evidence is sufficient to establish the Respondent's communication with the Petitioner, while often related to parenting, nonetheless demonstrated a knowing and willful course of conduct aimed at alarming, annoying, or harassing the Petitioner.

Thus, of the many forms of domestic violence, the court identified the harassment prong as the statutory basis for its order.

In turn, we hold the factual and legal basis to grant the DVPO was, if not fulsome, was sufficient for appellate review, particularly as the underlying statute and no other authority requires detailed findings of fact or conclusions of law.[4]

C.     The Sufficiency of the Evidence of Domestic Violence Harassment

---

[4] Wager also argues that the court's findings were deficient because its order did not contain "an explanation for why Ms. Wager's communications created a threat to Platt's physical safety." In support of her claim that the court found, without sufficient support, that she posed a threat to Platt's *physical* safety, Wager cites to a box checked under finding number seven on the amended protection order. Indeed, in the amended order, there is a box checked indicating the court found "[t]he restrained person represents a credible threat to the physical safety of the protected person/s." However, the court did not make or adopt a finding that Wager posed a threat to Platt's physical safety when it announced its oral ruling, nor did it separately state that in its order on revision. Moreover, there is no requirement that the court find a risk to someone's physical safety before it can issue a harassment-based DVPO. Thus, whether it did or did not substantiate this superfluous finding is irrelevant to our analysis.

1. Applicable Law

To grant a domestic violence protection order, the trial court must find by a preponderance of the evidence that the petitioner has been subjected to domestic violence by the respondent. RCW 7.105.225(1)(a). Domestic violence can occur between intimate partners, the definition of which includes persons who formerly resided with one another or share a child in common. RCW 7.105.010(20). One form of domestic violence is unlawful harassment. RCW 7.105.010(9). More specifically, RCW 7.105.010(9) defines domestic violence to mean any of the following: "Physical harm. . . infliction of fear of physical harm . . . or . . . *unlawful harassment*." RCW 7.105.010(9) (emphasis added).

RCW 7.105.010(36)(a) explains that "unlawful harassment" means, not only an act or threat of *physical* violence, but also:

> A knowing and willful *course of conduct* directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, *and* that serves no legitimate or lawful purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner . . . .

RCW 7.105.010(36) (emphasis added). "Course of conduct" refers to a pattern of conduct composed of a series of acts that occur over a period of time. RCW 7.105.010(6)(b). The series of acts which constitute harassment may encompass any form of communication, contact, or conduct that evidence a continuity of purpose. Id. The statute further expressly exempts constitutionally protected free speech or activity from its definition of harassment. Id.

RCW 7.105.010(6)(b) provides factors to use "[i]n determining whether the course of conduct serves any legitimate or lawful purpose." Among the relevant

11

factors are whether:

> (ii) [t]he respondent has been given clear notice that all further contact with the petitioner is unwanted;
> (iii) [t]he respondent's course of conduct appears designed to alarm, annoy, or harass the petitioner;
> (v) [t]he respondent's course of conduct has the purpose or effect of unreasonably interfering with the petitioner's privacy or the purpose or effect of creating an intimidating, hostile, or offensive living environment for the petitioner; . . .
> (vi) [c]ontact by the respondent with the petitioner or the petitioner's family has been limited in any manner by any previous court order.

RCW 7.105.010(6)(b). Taken together, the statutory definitions allow a court to enter a DVPO after finding harassment based on a pattern of knowing and willful actions over a period of time, in which someone directs a series of communications or conduct to another, without a lawful purpose, that are detrimental and reasonably cause the recipient to suffer emotional distress. On its plain terms, such a course of conduct may occur even without evidence of a threat of violence or an act of physical violence.

   2. Discussion

Wager argues the trial court abused its discretion when it found she committed domestic violence through unlawful harassment. Specifically, she argues, on the one hand, that the court's decision was "based on an incorrect legal standard" (i.e., entering a DVPO based on mere words) and, on the other hand, that the order otherwise "lacked substantial evidence to support them." She contends the only evidence before the court involved Wager's speech which is legally insufficient and that, because the court did not find she was physically aggressive, that she stalked Platt, or had done anything else to Platt other than "say annoying things," there was insufficient evidence to grant the DVPO.

12

As to the first argument, Wager's suggestion that the evidence in the record consisted only of her speech is simply factually incorrect. The evidence before the court included allegations of behavior or conduct beyond mere speech. Platt provided evidence that Wager chased after him in a parking lot. He also provided evidence that she "blatantly" refused to comply with the legal obligation to turn over numerous, potentially illegally-owned, firearms. The court also had evidence before it that Wager had violated a separate antiharassment order. Moreover, multiple witnesses declared that she drank excessive amounts of alcohol, in a manner endangering their child. It is simply not correct, as Wager contends, that the court "did not find that the harassment was based on anything other than Ms. Wager's speech." The court based its decision on the totality of the evidence and it is not for this court to "adjudge witness credibility" or weigh allegations of concerning conduct when they are in the record. T.W.J., 193 Wn. App. at 8.

Even if we were solely to examine Wager's written communications, we are unable to conclude that the court abused its discretion in finding her text and other messages implicate more than just "annoying" words. That is, a reasonable person could find that those texts constituted harassment because the totality of her communications demonstrate a course of conduct intended to alarm, annoy or threaten Platt. RCW 7.105.010(36).

Indeed, several of Wager's messages to Platt explicitly state that she had the intention to insult and threaten Platt. For instance, she writes in one series of text messages, "And yes/*this is a threat*. . . *Consider it a threat* and if you are insulted you can also consider mission accomplished." (Emphasis added). In a

separate e-mail, she writes, "I will take custody from you if you don't start participating [in "mutual" activities] . . . *Yes – this is a threat*." (Emphasis added).

Platt also provided text and other messages Wager sent to him and to his fiancée over time, which a reasonable person could conclude were intended to demean their physical appearance, their sincerity, and their fidelity to each other. In text messages Platt filed with the court, he provided Wager with responses that a reasonable person could conclude were clear notice that such contact was unwanted, and yet, in further texts, Wager repeatedly chose to continue to send what a reasonable person could find to be "alarming" messages. See RCW 7.105.010(6)(b)(ii) (a petitioner may establish a course of conduct in part by showing "[t]he respondent has been given clear notice that all further contact with the petitioner is unwanted"); RCW 7.105.010(36).

In short, there is sufficient evidence in the record "to persuade a fair-minded, rational person that" the finding that Wager knowingly and willfully engaged in an annoying, harassing, or detrimental course of conduct, as required by RCW 7.105.010(36)(a), "is true." Graser, 28 Wn. App. 2d at 941.

In response, Wager suggests that there was no evidence of harassment because Wager's communications were "made in the context of on-going discussions about parenting issues." But her communications were not automatically sent for a "lawful purpose," under RCW 7.105.010(36), simply because much of her contact with Platt temporally related to their parenting plan or conveyed parenting requests. That is, a respondent's threats are not cleansed from being harassment simply because the purpose behind them was to raise

14

parenting objections. Here, we cannot conclude that the trial court erred when it found the totality of Wager's communication with Platt, while often related to parenting, nonetheless demonstrated a knowing and willful course of conduct aimed at alarming, annoying, or harassing Platt.

Finally, there is sufficient evidence in the record to provide a tenable basis for the court's finding that Wager's conduct caused Platt substantial emotional distress, as required by the statute. RCW 7.105.010(36). Platt proffered more than conclusory statements about the impact of Wager's conduct. Several declarations describe in some detail that Wager's course of conduct caused a variety of emotional disturbances, which manifested themselves in physical and psychological distress. Platt, for example, attested that:

> Since August 2022, I have experienced severe trauma, fear, insomnia, headaches, and fatigue as a result of [Wager's] continuous threats and emotional abuse. I have sought professional help from a psychologist and a naturopath to cope with the ongoing trauma and manage my health issues resulting from this abuse.

The record here establishes that there was sufficient evidence "to persuade a fair-minded, rational person that" Wager engaged in domestic violence by harassing Platt.[5]  Graser, 28 Wn. App. 2d at 941.

D.      Wager's Constitutional Claim

---

[5] In the alternative, Wager argues that Platt should be denied the equitable relief of a protection order because he engaged in coercive litigation tactics by falsely accusing her of abusing their son. The court did not actually find, however, that Platt falsely accused her. Rather, it decided that "limited details" in the evidence and the timing of the accusations raised "credibility questions," such that it declined to find she did abuse her son. Thus, we need not reach whether he engaged in abusive litigation tactics in a way that may bar him from receiving equitable relief. There is simply no factual basis for the claim.

Wager alleges that, *if* the DVPO statute permits a court to find harassment based on pure speech, the statute violates her constitutional right to free speech on its face. She did not raise this argument in the trial court.

This court may refuse to review claims of error which were not raised in the trial court. RAP 2.5(a). "The purpose underlying our insistence on issue preservation is to encourage 'the efficient use of judicial resources.'" State v. Robinson, 171 Wn.2d 292, 304, 253 P.3d 84 (2011) (quoting State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)). However, pursuant to RAP 2.5(a), "a party *may* raise . . . for the first time in the appellate court . . . [a] (3) manifest error affecting a constitutional right." RAP 2.5(a). Wager argues the issue is so preserved simply because "the only basis for the issuance of the order was Platt's claim of emotional distress in response to Wager's speech." For the reasons above, this claim is simply not true, and this argument is otherwise frankly conclusory and this court declines to further review it. In re Guardianship of Ursich, 10 Wn. App. 2d 263, 278, 448 P.3d 112 (2019) (Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration). [6]

---

[6] Wager appeals, not only the amended DVPO and order on revisions, but also the order denying her motion for reconsideration. However, Wager's briefing presents no argument specifically on the motion for reconsideration and this court does not consider it. Matter of Dependency of A.N.C., 24 Wn. App. 2d 408, 419, 520 P.3d 500 (2022) ("A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment.") (internal quotation marks omitted) (quoting Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010)).

### III.   CONCLUSION

We affirm.

_Díaz, J._

WE CONCUR:

_Hazelrigg, ACJ_        _Mann, J._